BOYLSTON INSURANCE COMPANY, of Boston, and others, *v.* JOHN D. DAVIS.

Where A enters into an agreement with B to save from a wrecked vessel as much of the cargo as could be saved, and B agrees to allow him, A, for his services, such a *per cent.* of the property saved, as compensation; and in pursuance of such agreement, A recovers from the wreck a portion of the cargo and lands it on the beach in a place of safety: *Held*, That A and B are tenants in common of the property so saved, and that the undivided share of A is liable to be seized by the sheriff under a warrant of attachment.

(*Blevins* v. *Baker*, 11 Ired. 291, and *Powell* v. *Hill*, 64 N. C. Rep. 169, cited and approved.)

CIVIL ACTION, for the recovery of certain iron saved from the wreck of the ship "Pontiac," tried before *Clarke, J.,* at the Fall Term, 1872, of the Superior Court of CARTERET county.

The plaintiffs, Marine Insurance Companies, claimed title to the property sought to be recovered, by virtue of the following agreement, entered into by their duly accredited agents, B. L. Perry and E. H. Faucon, that is to say:

"It is agreed between B. L. Perry and E. H. Faucon, parties of the first part, and John Lewis, of the second part, that the said Lewis is to use all his means and skill necessary, and that he is possessed of, or can procure, to get from the wreck of the late ship "Pontiac," now under water, off and near the Core Banks, or Beach, all the property of whatever description, or so much of it as he can possibly at any time succeed in obtaining, and land it in the store or freight-house at Morehead City.

It being understood and agreed that the said Lewis is to receive three quarters, or seventy-five *per cent.* of the whole, and the said Perry and Faucon the remaining one quarter, or twenty-five *per cent.*, and is to go into the possession of said Perry, one of the parties of the first part, and resident in Beaufort, N. C.; and the division of the property recovered is to be made in the presence of ————, with the consent of the said Perry; and in case of his sickness or other-

2

wise unable to act, then the said Perry shall appoint some one to act in his place, and to give his receipt for the property so received, and with a description and memorandum of it.

And the said Lewis, of the second part, engages to use his best diligence in working at the above named property, whenever the condition of the weather and sea permit him to do so. And it is also agreed, that if said Lewis, of the second part, choose to receive his three quarters here, as it may be brought in and divided, or to let it go forward undivided to a market, which will be the port of Boston, Mass., with the other quarter, he shall be allowed to do so—he, the said Lewis, of the second part paying his proportion of duties and all the other expenses that may accrue in forwarding the property north and the finally disposing of it. Said Lewis to draw at sight for whatever he may be entitled to, on being notified of the closing of any account of sales.

*Beaufort, N. C.,* March 6, 1871."

(Signed by Perry & Faucon, agents, and Lewis.)

In pursuance of the agreement, Lewis raised a quantity of iron from the wreck, and placed it on the beach. Before the iron was removed from the beach, and a short time after it was taken from the wreck, an attachment was issued at the instance of one Martha Lambert, from the Superior Court of Carteret county, against said Lewis, and placed in the hands of the present defendant, sheriff of said county.

At the January Term, 1872, of the Court, judgment was rendered in favor of the plaintiff in the attachment, upon which execution issued, commanding the iron to be sold, &c. Before this execution came to the hands of the defendants, the plaintiffs commenced this action, claiming the iron, and giving the necessary undertaking, took the same into possession.

On the trial, the jury rendered a verdict in favor of the plaintiffs; and a judgment condemning the property to the

use of the plaintiffs, was entered up by the Court; from which judgment the defendant appealed.

*J. H. Haughton* and *Hubbard*, for appellant.

1. The contract declared on, shows, that if plaintiffs had any right to the property before separation and delivery of their part, it was as tenants in common with the debtor, whose property was seized by defendant under execution against him. *Moon* v. *Spruill*, 13 Ired. 53; *Powell* v. *Hill*, 64 N. C. Rep. 169; or,

2. The title to the whole property was in the debtor until a division. *Waldo* v. *Belcher*, 11 Ired. 612; *Blakeley* v. *Patrick*, 67 N. C. Rep. 40; 1 Parsons on Con. (5th ed.) 163. n. (n).

This was a case of salvage. The property was saved from extraordinary danger. It is equally a case of salvage service, whether rendered at sea or upon property wrecked at sea, but then on land: 2. Parsons, 315–'16. Salvors of property derelict acquire, by taking possession thereof, a vested interest. *Ibid.*, 319. This is usually from one-half to one-third. The effect of the contract was to increase the compensation, but did not take from the salvor the vested interest which the law gave him. Plaintiffs' agreement is, by construction of law, that when division takes place, they were to have one-fourth, but until then they have no legal interest separate from the salvor, and are tenants in common.

3. Replevin will not lie in this case. 1st: Because for the above reasons, plaintiffs were not entitled to the possession of the property. 2nd: That the property was *in custodia legis*. *McLeod* v. *Oates*, 8 Ired., 394; 9 Ired. 89; 15 Johns' Rep., 402; C. C. P. sec. 204.

Sheriff shall be liable for property seized under attachment, as if taken under execution. C. C. P. sec. 204; see also *Ibid.*, secs. 186, 187.

*Green*, for plaintiffs.

RODMAN, J.   The main question is, did Lewis, by virtue of his contract with the plaintiffs, acquire a property as a co-tenant with them, in the iron saved by him, which was liable to levy under execution against him?   We think he did.   It depends altogether on the intent and meaning of the written contract.   It was contended that this did not amount to a sale of an undivided share of the iron, as, and when it was recovered and put in a place of safety, but that it was merely executory until the iron should be carried to Morehead and divided in the presence of Perry.

To seek for the meaning of the parties in a contract not accurately or technically drawn, by considering particular words or phrases in it, which incline more or less to either one side or the other, though in some cases necessary, rarely gives a clear and satisfactory result.   It is in general safer to draw a conclusion from the circumstances of the contracting parties and the general provisions of the instrument.   If, in this case, the plaintiffs had agreed to pay Lewis a certain sum per ton of iron saved, he would, in the absence of a contrary agreement, have had a lien upon the iron for the sum earned.   The actual agreement was, that he should have an undivided share in lieu of a certain sum and a lien.   But this share could not be a security in the nature of a lien, unless a property in the share passed to him at once.   The provisions for the iron being carried to Morehead and there divided, or sent to Boston for sale, at the pleasure of Lewis, are not conditions precedent to the vesting of the property, but merely provisions for its division, and directing its disposition after it should have become common property.   We consider that Lewis was a tenant in common with the plaintiffs in the iron, while it laid on Core beach.   Now, it is settled law, that a sheriff may sell under execution the undivided share of a tenant in common in goods, and for that purpose he may seize the whole.   *Blevins* v. *Baker*, 11 Ired., 291.   His right is the

BOYLSTON INSURANCE COMPANY *v.* JOHN D. DAVIS.

same as respects the seizure, and as far as concerns this question, under an attachment, as it would be under final process. In the case cited, the officer divided the common property and sold only the share of the defendant in execution. In England it is held that a sheriff, under an execution against one partner, may seize all the goods of the partnership, and may sell the interest of the insolvent partner in them, to be ascertained, on the taking of the partnership account, but that he ought not to deliver the goods to the purchaser, so as to exclude the possession of the solvent partners. Lindley on Partnership, 584. How this may be in North Carolina, and whether the same rule would apply to the case of goods held in common, but not in partnership, it is unnecessary to inquire.

It is equally well settled that a sheriff who seizes goods under execution, acquires the property of the defendant in the execution in them. The defendant thus became *pro hac vice* a tenant in common with the plaintiff. It is also settled, that one tenant in common cannot maintain any action to recover the possession of the common goods from his co-tenant. Each is equally entitled to the possession of the whole. *Powell* v. *Hill,* 64 N. C. Rep. 169.

The judgment below is reversed, and as the plaintiffs have obtained possession, the case is remanded to that Court, in order that a judgment may be given there, in conformity to this opinion, and that such further proceedings be had as the law requires. The defendant will recover his costs in this Court.

Let this opinion be certified.

PER CURIAM.                    Judgment reversed.